Judge Buckner
d-livered the nninion of the Court.
In 18U3, Thomas Dean sold to James Rice, four hundred acres of land, in the county of Knox, and executed to him a bond for the conveyance of it. It was a part of a larger survey, in the name of Talbot, to wnich Dean sat up a claim. Sometime after •the contract was made, Rice became dissatisfied with 'the boundaries of the land as described in the bond, and applied to Dean on the subject, who agreed to have it laid off in-a different shape, and Pitman, a deputy surveyor in that county, was called upon by the parties in 1811 or 1812, and made a survey of it in accordance. *345 *mth the second agreement. In March, 1813, Hice entered into a contract with John Jackson, for a sale the ¡and, which he had. purchased of Deanj and ted to him a bond for a conveyance. '
The price agreed upon, was the sum of $1800, for which,'different notes were executed. Rice bound himself to convey, by deed with general warranty, up•on payment of the note, which became dueon the 25th of December, 1817.
The following, is an extract from the bond, “know all men, &c. that I, James Rice, have sold unto. John Jackson, sen. all that tract or parcél of land, whereon, I now live, containing, by survey, four hundred acres; it being a part of John Talbot’s survey of two thousand five hundred acres, and the same being sold by Thomas Dean of Washington county, Kentucky, to sue, and surveyed by Lot Pitman,” .
Dean having failed to make a Conveyance to Rice, the latter instituted against him, a suit in chancery, in the Washington circuit court, and at the November term of that court, in the year 1813, a decree was rendered in favor of Rice, that Dean should convey four hundred acres, part of John Talbot’s-survey of two thousand five hundred acres, &c.
Dean havingfailedto comply with' the decree, it appears, that it was executed by a commissioner, appointed by the decree, for that purpose.
Lot Pitman, who made the survey alluded to in the bond, from Rice to Jackson, made also the survey, under thef decree of the Washington circuit court, in virtue of which, the commissioner executed the aforesaid conveyance.
From his deposition, it appears, that sixty nine and a half acres of the four hundred acres surveyed by him for Rice and Dean, in 1811 or 1812, were not embraced by the decree of the Washington circuit court; and-consequently, not by the deed of the commissioner made under that decree. But the survey under the decree, contained the full quantity of four hundred acres; three hundred and thirty and a half being included within the lines of the survey made by him in 1811 or 1812, and the other sixty nine and a half boons a part of Talbot’s survey as claimed by Dean.
*346 In 1822, Jackson filed his bill in chancery against Rice, to be relieved against certain judgments recovered against ¡¿tirri by Rice, on some of the notes executed as the price of the land, and to obtain from him a conveyance of so much of the four hundred acres, included in the survey made by Pitman, as he might be able to convey. He prays for an injunction against those judgments for such an amount, as might be equal to the value of the land, which Rice should prove unable to convey. The bond from Rice to him, Rice’s name having been torn off, is made an exhibí t. He alleges, that Rice came to his house, whilst he was absent, and informed his son Jarvis Jackson, that he had prepared a deed for the four hundred acres sold to him, in accordance with his bond, and wished to inspect the bond which was handed to him; aná that Rice, when his son’s attention was drawn to some other matter, tore off his signature; that the deed was delivered to his son, who refused to accept it, on account of the variance between it and the bond; and that he, complainant, directed him not to receiv e it. He exhibits the deed referred to, and insists, that it embraces between sixty and seventy acres of land, which Dean had sold to him. before Rice made his purchase from the same individual.
The deed thus exhibited, was executed by Rice and wife, (with, a relinquishment of her dower,) to Jackson, the complainant, for the land embraced by the decree above referred to, witli a clause of general warranty, and is witnessed by several persons.
Rice answered the bill, giving an account, of the transaction, very different from that given by Jackson.
He says, that he prepared a deed embracing the land conveyed to him by the commissioner, and which he considers, as strictly according with the bond which he had executed for a conveyance; that he carried it fo the house of the complainant, where he found both him and his son Jarvis, and presented it, informing the complainant, that he had come to deliver it, in compliance with his contract; and read it distinctly, to both, the complainant and his son. He says, that the complainant expressed himself, as entirely satisfied, and after he and his son had stepped out of the room and remained some time, they returned, and the complainant *347 asked him if he did not wish to take in his bond, directing Jarvis Jackson to hand it to him, Rice, which was accordingly done; and he then, in their presence, tore off his signature and threw it on the floor, and never again heard of it, until the institution of this suit. He further states, that the complainant was so entirely satisfied with the deed, that he directed his son to give to him, Rice, three dollars, to purchase a dress for his wife, in consideration of her prompt relinquishment of her dower, which he did, in pursuance of the directions; and that the complainant then agreed to ad* vanee to him §'100 of the purchase money, which was-not, at that time, due.
The circuit court entered an interlocutory decree, declaring it to be the opinion of the court, that the complainant was entitled to relief, to an extent, equal to the difference, in the value of the land, according to the boundaries described in the bond from Rice to the complainant, and those given in the deed made by the commissioner, under the decree of the Washington circuit court. The court also decided, that as thirty of the sixty nine and a half acres, embraced by the deed from Rice to Jackson, were not included by the survey made by Pitman, in 1812 or 1813, Jackson, to that extent, had, under his alleged purchase from Dean, an equity, prior and superior to the claim of Rice derived under the decree in his favor; so that, in reality, Jackson is entitled, acccording to the principles of this interlocutory decree, to damages against Rice, for the difference between the thirty nine and a half, and sixty nine and half acres of land. ■ To ascertain this difference, a jury was empannelled and sworn. The verdict returned, is in the following words:-. £kWe, of the jury find, that the complainant, John Jackson, is entitled to a deduction from the-purchase money, agreed to be given for the tract of land in the decree mentioned, of §115, for the difference in the boundaries of the- land as sold, and as conveyed to the complainant, under the deed tendered by the defendant Rice, made under the decree of the Washington circuit court; and for the loss of the thirty acres of land-in the interlocutory decree mentioned, being the difference between the sixty nine and a half acres of *348 land, and the thirty nine and a half acres, as specified in the said decree.”
This verdict was- set aside, the court declaring it to be improper and erroneous.
The cause was thereupon submitted by the parties-to the court, for a final decision, upon the written and parol evidence adduced; when, a decree was entered, that Jackson should receive from Rice, the deed exhibited in-the bill of the complainant, according to the* boundaries therein described, in satisfaction of the-con trac t - between him and Rice. That' the injonctkwjp which had been granted against the judgments at law!, he made perpetual for the sum.of one-hundred and seventy dollars, together with the. legal costs ex» pended by Jackson,in.the prosecution of this suit, and the costs at law, fee- As to the residue of the judgments, in the bill mentioned, the injunction was dissolved. And.it was further decreed,.“that the defendant recover of the complainant, the said balance,to be ascertained by the clerk, with legal interest, from the time the-same became due, and ten per centum damages thereon, and that he may have execution, for the same accordingly.” To. reverse it, Rice prosecutes, this writ-of error...
We cannot approve the decree rendered by the circuit court, upon the merits of the case, nor as to its details. Upon, the supposition, that the deed executed by Rice, had not been accepted by the defendant in error, lie might have claimed with propriety, a rescisión of the contract; for the plaintiff in error does not show such a title to any part of the land-, as a court of equity should have compelled his adversary to accept.
But,.it does not seem to have been Jackson’s object fio procure ay escisión of the contract.
He was invited by Rice, in his answer, to permit such a decree to be entered,.which he declined; and seems to have sought an allowance for that part of the-land, as surveyed by Pitman,-which was not included in the deed from Rice. That ought to-.have been the decree,if he was entitled to an injunction against any partea the judgments at law; for, although,,as already remarked, the plaintiff in error did not exhibit the -evidences of. a title which hjs adversary could have *349 been compelled'to accept, yet, if he was satisfied with the decree of the Washington circuit court,-as suffident, so far as it embraced land purchased by Jackson from Rice, the latter could not properly object to make a conveyance for so much.. Instead of that, however.the decree makes for the-parties a new contract, essentially variant from the one which they had made-. Rice insists, that the deed from him, had been accepted, in full discharge of his bond. The decree of the circuit court denies that; but confirms the conveyance, and declares Rice’s title invalid, as to thirty acres of the land embraced by that conveyance; upon the allegation, that Jackson’s equity in it, was superior to the claim which the plaintiff in error derived, under his purchase, and the decree in his fayor. Rice may greatly prefer to pay the value of the sixty nine and a half acres, and retain his title or claim to so much of the land embraced by the decree of the Washington circuit court, as was not included within the surveysoldby him to Jackson, to yielding it; and moreover, paying one hundred and seventy dollars. If,however, it was proper to give a decree in favor of the defendant in error, it was unnecessary' and improper to direct the balance, after deducting the amount injoined, to be ascertained by the clerk, and to give a decree for it, with interest. To coerce payment of any balance due, the proper mode was, to issue executions on the judgments at law.
The name oi the obligor ^“^tor.nt.oil ¡6strongpriwe facie evidence, that it has been correct!*cancelled,.
But we are of opinion, that the court ought not, to have made any decree in favor of Jackson, except, to perfect the conveyance already made; for as the time bad elapsed, previous to the instituí on of this suit, within which, the deed from Rice to Jackson could be admitted to record by the clerk, so as to give it the effect of a recorded deed, there would be no impropriety in causing it to be done by decree.
The defendant in error presents, as the foundation of his claim, a mutilated writing, with the name of the obligor torn off, furnishing thereby, strong prima fide evidence, that it had been correctly cancelled; and that it had no obligatory force in law or equity.
The manner of its cancellation, as exhibited in his bin. is expressly denied by the plaintiff in error,
*350 The deposition of Jarvis Jackson,his son,is the only-proof in the cause of the circumstances, under which, the transaction occurred; and that,is far from being a satisfactory confutation of the truth of Rice’s answer; and it expressly contradicts the statement made by his father, in his bill, in which he alleges, that the plaintiff in error came to his house and left the deed, when he was absent. Jarvis Jackson swears, that his father was at home when the deed was left, and that Rice said at the time, that he could not make a conveyance-in any other manner, than according to that deed; but had no doubt, Dean would convey the land left out, in lieu of that included in the deed, hut which was not. embraced in the bond from him, Rice, to Jackson.
He also swears, that Rice tore his signature- from the bond without the consent or knowledge of him, Jarvis; that his father was, at the time, about the house, but did not know for some time alter it was done, that the signature was taken off. But, in answer to interrogatories propounded to him, by Rice, be admits, that he acted, respecting the land in question, as the agent of his father; that he paid Rice, in part of the price due for it, one hundred dollars, after he received the deed; but that he did not receive it in discharge of the bond; thathe did not tell Rice, the deed would not be received; but told him, if Dean would convey the land left out, all would, be right; that he took up the bond after Rice’s signature was torn from it, but did not let him know that he had preserved it, or that heeonsidered it as still obligatory; but that he informed Rice by letter, that Dean, to whom he had written on the subject of the expected conveyance of the sixty nine and a half acres, had failed to answer the letter; and that he and the defendant in error still calculated on a conveyance from Rice, if Dean failed.
There are other statements made in this deposition, casting too deep a shade of suspicion over the attempt to set up the bond as obligatory, to authorize the decree pronounced by the circuit court. But we deem it unnecessary to notice- them in this opinion. That the defendant in error, could, under all the circumstances of this case, have remained ignorant of the cancellation of the bond, and the reception of the deed, at the time ¡hose events occurred, is utterly incredible;, and that *351 knowing what was done, if .he had disapproved it, he should have omitted to signify, by word or deed, his disapprobation, (and it is not pretended, that he or son did express the slightest displeasure,) is not less incredible. '
Crittenden, for plaintiff; Triplett, for defendant.
The decree of the circuit court must be reversed, and the cause remanded to that court, with directions to dissolve the injunctions with damages, and for such other proceedings to be had, as may not be inconsistent with this opinion.